UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **WISZNIA COMPANY, INC.** | \* | **CIVIL ACTION** |
| | \* | |
| **VERSUS** | \* | **NO. 11-2657** |
| | \* | |
| **GENERAL STAR INDEMNITY COMPANY** | \* | **SECTION "L"(3)** |

## ORDER AND REASONS

Before the Court are two motions: (1) Plaintiff Wisznia Company, Inc.'s ("Wisznia") Motion for Partial Summary Judgment (Rec. Doc. 36); and (2) Defendant General Star Indemnity Company's ("General Star") Cross-motion for Summary Judgment (Rec. Doc. 37). The Court has reviewed the briefs and the applicable law and now issues this Order and Reasons.

**I.     Background**

This case involves two insurance policies issued by Defendant General star to Plaintiff Wisznia that provided general liability coverage. (Rec. Docs. 36-6, 36-7).

In June 2009, the Parish of Jefferson ("the Parish"), a former client of Wisznia, filed a complaint against Wisznia in the 24th Judicial District Court for the Parish of Jefferson. (Rec. Doc. 36-5). According to the complaint, the Parish entered into a design contract with Wisznia for design of a performing arts center. (Rec. Doc. 36-5 at 2). The Parish alleged that Wisznia "agreed to use its professional architectural engineering and construction administration skills and knowledge to prepare plans and specifications...." The Parish further alleged that "[a]s a direct and proximate result of WISZNIA's breach of its contractual warranty, negligence, and lack of professional skill in designing THE PROJECT, THE PARISH has experienced and continues to experience certain problems...." (Rec. Doc. 36-5 at 4). Among the many

1

accusations contained in the complaint, the Parish accuses Wisznia of:

> a) Designing and preparing a defective set of plans and specifications for the project; b) Failing to coordinate the design with its consultants in an effective and professional manner; c) Failing to design THE PROJECT with any accurate and sufficient structural detailing, requiring the modification of the building; d) Failing to provide specifications that were definite in concept; e) Under-designing the project such that the design fails to meet WISZNIA's professional obligations to Petitioner; and [f)] Any and all negligent acts and omissions and/or contractual or warranty breaches to be proven at trial. (Rec. Doc. 36-5 at 7).

On October 7, 2009, and again on November 17, 2009, Wisznia notified General Star of the pending lawsuit in order to demand defense and indemnity. (Rec. Docs. 1-2 at 25, 43). On October 14, 2009, and again on December 16, 2009, General Star denied all claims for defense and indemnity. (Rec. Docs. 1-2 at 27, 44). On June 23, 2011, Wisznia filed a Petition for Declaratory Judgment in the Civil District Court for the Parish of Orleans, seeking a judicial determination that General Star owed Wisznia a duty to defend under the insurance policy. General Star removed the case to this Court. (Rec. Doc. 1)

## II.     Present Motions

On January 31, 2013, Wisznia filed a Motion for Partial Summary Judgment. (Rec. Doc. 36). Wisznia claims that the Parish's complaint included allegations of both simple and professional negligence. Wisznia emphasizes that an insurer's duty to defend is broader than its duty to pay a claim. According to Wisznia, "[i]f 'there are any facts in the complaint which, if taken as true, support a claim for which coverage is not unambiguously excluded,' the insurer must defend the insured." (Rec. Doc. 36-2 at 14) (quoting *Lamar Advertising Co. v. Continental Cas. Co.*, 396 F.3d 654, 660 (5th Cir. 2005)). Using this standard, Wisznia argues that the Parish's allegation of negligence was not "unambiguously excluded" and, therefore, triggered

General Star's duty to defend Wisznia in the lawsuit. (Rec. Doc. 36-2 at 14).

On February 28, 2013, General Star filed an Opposition and Cross-Motion for Summary Judgment. (Rec. Doc. 37). General Star claims that the two commercial general liability policies each contained three separate exclusions that excluded coverage for the allegations made by the Parish. First, General Star argues that because the Parish's complaint only pertained to liability arising from the rendering of professional services, the policies' "professional liability" exclusion unambiguously barred coverage. (Rec. Doc. 37 at 8-14). Second, General Star argues that the policies' contractual liability exclusion bars coverage for breach of contract claims and negligence claims, like the ones made by the Parish, that are intertwined with a contractual undertaking to perform work. (Rec. Doc. 37 at 14-15). Third, General Star argues that the "impaired property" exclusion bars insurance coverage for the Parish's claims that only resulted in economic loss. (Rec. Doc. 37 at 15-17). General Star asserts that these exclusions are clear and unambiguous and they owed no duty to defend.

**III.    Law & Analysis**

    **A.    Standard**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56 (c)). When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). "On cross-motions for summary judgment, [a court] review[s]

3

each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Ford Motor Co. v. Tex Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001).  The court must find "[a] factual dispute [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party [and a] fact [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"Whether an insurer has a duty to defend is determined solely by 'compar[ing] the allegations in the complaint against the insured with the terms of the policy' at issue[–]the so-called "eight corners" rule." *Lamar Advertising Co.*, 396 F.3d at 660.  "The duty to defend arises if there are any facts, which, if taken as true, support a claim for which coverage is not unambiguously excluded." *Complaint of Stone Petroleum Corp.*, 961 F.2d 90, 91 (5th Cir. 1992).  "Assuming all the allegations of the petition are true, the insurer must defend, regardless of the outcome of the suit, if there would be both (1) coverage under the policy and (2) liability to the plaintiff." *Hardy v. Hartford Ins. Co.*, 236 F.3d 287, 290 (5th Cir. 2001) (citing *Yount v. Maisano*, 627 So.2d 148, 153 (La. 1993)).  The allegations must be "liberally interpreted" in favor of the insured.  *See id.*

### B.   "Professional Liability" Exclusion

The commercial general liability insurance policies that General Star provided to Wisznia covered "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."  (Rec. Doc. 36-6 at 13).  It further provided that "[t]his insurance applies to 'bodily injury' and 'property damage' only if: (1)

The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'; and (2) The 'bodily injury' or 'property damage' occurs during the policy period."  (Rec. Doc. 36-6 at 13).  General Star concedes that "the Jefferson Parish lawsuit potentially alleges 'property damage' caused by an 'occurrence.'"  (Rec. Doc. 37 at 8).  Therefore, the question before this Court is whether the allegations were unambiguously excluded from coverage through one of the policies' exclusions.

> The policies included a professional liability exclusion, which read:
>
>> This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.
>>
>> Professional services include:
>> 1. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and
>>
>> 2. Supervisory, inspection, architectural or engineering activities.

(Rec. Doc. 36-6 at 48).  Under Louisiana law, "professional services" are defined as "'services performed by one in the ordinary course of the practice of [one's] profession, on behalf of another.'"  *Thermo Terratech v. GDC Enviro-Solutions, Inc.*, 265 F.3d 329, 336 (5th Cir. 2001).  To determine whether a service is professional in nature, the court should look at "the character of the services performed, such as whether special knowledge and technical expertise are required.... Professional services involve discretion acquired by special training and the exercise of special judgment."  *Id.* (citing *Abramson v. Florida Gas Transmission Co.*, 908 F.Supp. 1389, 1394 (E.D.La. 1988)).

According to the definition contained in the General Star insurance policies, as well as the Fifth Circuit's guidance, this Court finds that the allegations in the Parish's complaint were unambiguously excluded by the professional liability exclusion. Every page of the complaint contained multiple references to Wisznia's professional services, professional responsibilities, and/or professional wrongdoings. The complaint also contained a comprehensive list of factual allegations that described in great detail many of the problems that were caused by these alleged wrongdoings. For instance, the Parish alleged that there were "dimensioning conflicts between the architectural drawings and the structural drawings," "[f]our hundred fifty-five (455) air conditioning registers...not specifically located on WISZNIA's drawings," "numerous concrete details were either in conflict or omitted," "steel stairs were not supported, requiring foundation modifications to support the stairs," and so forth. (Rec. Doc. 36-5). Of the approximately thirty factual allegations, every one of them pertained to the rendering of or failure to render professional services by Wisznia. Not one factual allegation supported a claim for simple, non-professional negligence.

Wisznia points to the Parish's use of the term "negligence," arguing that the Parish's allegation of "negligence," as opposed to "professional negligence," triggered General Star's duty to defend. (Rec. Doc. 36-2 at 8). While the Parish does allege that Wisznia "was negligent," this is not supported by any claims of non-professional wrongdoing in the complaint. Furthermore, the allegations of negligence are found in the context of professional liability. The Parish stated that "WISZNIA was negligent and breached its contractual and warranty obligations...," and supported this claim with a list of six specific accusations. (Rec. Doc. 36-5 at 7). Each of these six allegations involved the failure to render professional services. For instance, the Parish

accused Wisznia of "[d]esigning and preparing a defective set of plans," "[f]ailing to coordinate the design," "[u]nder-designing the project," and so forth. (Rec. Doc. 36-5 at 7). While the Parish concluded the list with a catch-all allegation–"[a]ny and all negligent acts and omissions and/or contractual or warranty breaches to be proven at trial"–it offered no factual basis for any non-professional liability.

This case is distinguishable from *Complaint of Stone Petroleum Corporation*, upon which Wisznia relies. 961 F.2d 90. In *Complaint of Stone Petroleum Corporation*, Williams, a marine surveyor, was sued after an explosion occurred on a barge that caused multiple deaths and injuries. *Id.* at 90-91. Williams' general liability insurer refused to defend Williams, claiming that the allegations were excluded under the "Malpractice and Professional Services" exclusion. *Id.* at 91. Reversing the district court's dismissal of Williams' claim against his insurance company, the Fifth Circuit found that the pleadings went "beyond the purview of professional services," and were, therefore, not covered by the professional services exclusion. *Id.* at 92.

In reaching this decision, the Fifth Circuit relied on two similar Louisiana appellate cases in which the courts held that the general liability insurer had a duty to defend, *CBM Engineers, Inc. v. Transcontinental Insurance Co.*, 460 So.2d 745 (La. App. 3d Cir. 1984) and *Gregoire v. AFB Construction Inc.,* 478 So.2d 538 (La. App. 1st Cir. 1985). These cases, like *Complaint of Stone Petroleum Corporation*, both involved personal injury. In *CBM Engineers, Inc.*, one of the allegations in the underlying complaint accused the structural engineers of "failing to make certain that all phases of the construction project including its machinery was [sic] in proper operating conditions [sic] as well as to make certain no defects were present." 460 So.2d at 746.

The Louisiana Third Circuit explained that this allegation could be construed to include "the breach of the general duty of reasonable care, owed by *all* involved in the construction project, to report unsafe conditions...." *Id.* at 747.  Accordingly, the court found that it was possible that some of the allegations fell outside of the "'professional' or 'supervisory' services plaintiffs agreed to perform in their contract with the building constructor." *Id.*

Similarly, in *Gregoire*, the underlying complaint contained allegations of negligent supervision.  The complaint alleged that the engineers "allowed the project to proceed when they knew, or should have known, that the utility pole which allegedly injured [the plaintiff] was in an unreasonably dangerous condition."  478 So.2d at 541.  Citing *CBM Engineers, Inc.*, the Louisiana First Circuit explained that these allegations could be liberally construed to include "the breach of the general duty of reasonable care." *Id.* at 541.  For this reason, both courts found that the general liability insurer had a duty to defend.

In contrast, the Parish's complaint in the present case did not include any allegations that could be construed to support a claim that Wisznia breached a general duty of care or acted negligently in a non-professional capacity.  The harms alleged by the Parish did not involve personal injury.  Instead, the Parish alleged numerous instances of wrongdoing by Wisznia, all involving the design and planning of the construction project.  The instant case is more similar to *QBE Ins. Corp. v. Brown & Mithcell, Inc.*, 591 F.3d 439.  There, the Fifth Circuit, interpreting Mississippi law, found that allegations made against the engineering firm, BMI, were excluded from coverage under the professional services exclusion.  *QBE, Ins. Corp.*, 591 F.3d at 445.  The court explained that the "complaint [was] explicit in attributing the accident to a breach of BMI's 'professional responsibilities' as the 'engineering firm' on the site." *Id.* at 444.  The court pointed

8

out that the complaint's allegations all pertained to BMI's role as the engineering firm. The complaint "assert[ed] that, as the engineering firm, BMI did and did not do certain things...as the engineering firm, it breached that professional responsibility." *Id.*

Similarly, the Parish's accusations all involved Wisznia in its role as the designer of the construction project. From the outset of the complaint, the Parish explained, "WISZNIA agreed to use its professional architectural engineering and construction administration skills and knowledge to prepare plans and specifications containing design, technical and other data and professional opinions for the design and construction" of the project. (Rec. Doc. 36-5 at 2). These services required "special knowledge," "technical expertise," and "discretion," and all of the allegations that followed in the complaint pertained to Wisznia's failure to perform this role. *See Thermo Terratech*, 265 F.3d at 336.

This Court has "liberally interpreted" the allegations in Wisznia's favor, looking for even the slightest accusation of non-professional misconduct, but has found none. For this reason, the Court finds that even "assuming all the allegations of the petition are true...," coverage would not have existed under the General Star policies. *See Lamar Advertising*, 396 F.3d at 660 (quoting *Hardy v. Hartford Ins. Co.*, 236 F.3d 287, 291 (5th Cir. 2001)).

### C.  Breach of Contract

The Court asked the parties for additional briefing on the question of whether "under Louisiana law and the terms of the instant policy...a duty to defend arise[s] from general allegations of breach of contract." (Rec. Doc. 55). The parties submitted extensive briefing on the questions posed by the Court, helping to enlighten the Court as to the relevant legal issues. However, the Court no longer finds it necessary to address these issues because it finds that the

Parish's allegations, even those pertaining to breach of contract, were all unambiguously excluded from coverage under General Star's professional liability exclusion.

**IV.     Conclusion**

For the forgoing reasons, IT IS ORDERED that Plaintiff's Motion for Partial Summary Judgment (Rec. Doc. 36) is DENIED.

IT IS FURTHER ORDERED that Defendant's Cross-Motion for Summary Judgment (Rec. Doc. 37) is GRANTED.

New Orleans, Louisiana, this 26th day of September, 2013.

_____
UNITED STATES DISTRICT JUDGE